## Continuation in Support of Criminal Complaint

I, Kevin Kaiser, being duly sworn, state as follows:

## I. Introduction

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April of 2023. From April 2023 to August 2026, I was assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, interstate threatening communications, and other violent crime matters, as defined under Title 18 of the United States Code. Since August 2026, I have been assigned to the FBI Grand Rapids Office.

2. During my tenure as a law enforcement officer, I have participated in investigations of unlawful drug trafficking, firearm possession, firearm trafficking, machine gun possession, and money laundering and, among other things, have conducted or participated in surveillance, the execution of search warrants, debriefings of informants, reviews of taped conversations and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds, and the dialect, lingo, and coded language used by narcotics traffickers.

3. In connection with my duties, I investigate criminal violations of the federal and state firearm offense and criminal violations of Title 18 of the United

States Code, including violations of Title 18, United States Code, Sections 922(g), 922(o) and 924(c). I also have been involved in the investigation of violations of the controlled substance laws, including, but not limited to, conspiracy and attempt to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846; possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); use of communication facilities to facilitate drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); and offenses involving money laundering as well as conspiracy and attempt to do the same, in violation of Title 18, United States Code, Sections 1956 and 1957.

4. Because this Continuation is for the limited purpose of establishing probable cause to support the Criminal Complaint, it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the individuals and events described in this Continuation. Nor am I seeking charges for every violation of federal controlled substances and firearm laws for which I believe has been committed in the investigation. This Continuation is made for the purpose of establishing probable cause that Nicholas CAMPFIELD committed the crime of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii).

5. The statements contained in this Continuation are based in part on: (a) my personal participation in this investigation; (b) information provided by other

federal and state law enforcement officers, including members of United States Postal Inspection Service (USPIS) and Drug Enforcement Administration (DEA), (c) surveillance reports; (d) criminal history records; and (e) my training and experience and the training and experience of other law enforcement agents.

## II. Probable Cause

A. Investigation Prior to September 30, 2026

6. In 2026, FBI, USPIS, and DEA initiated an investigation into Nicholas CAMPFIELD and the mailing of suspicious parcels from California to the Western District of Michigan (WDMI), specifically to 1633 Pennoyer Ave, Grand Haven, MI, 49417 (the Subject Premises).

7. Subject Premises has been identified as CAMPFIELD's regular residence in a variety of ways, including, it is his driver's license address with the Michigan Secretary of State, he has internet subscribed at Subject Premises in his own name, a red 2015 Dodge Charger with Michigan registration 4QSK15 affixed to the rear of the vehicle and Vehicle Identification Number (VIN) of 2C3CDXBG1FH768177 (Subject Vehicle) is registered to CAMPFIELD at Subject Premises, and dozens of days of physical and pole camera surveillance over the last several months show that he lives there.

8. On July 14, 2026, United States Postal Inspection Service (USPIS) investigators executed a federal warrant to search a USPS parcel (Parcel 1) with tracking number 9201 9909 8618 3443 3335 93. This parcel was addressed to Nicholas CAMPFIELD at 1633 Pennoyer Ave, Grand Haven, MI, 49417 (Subject Premises)

from a California address with a name that did not associate to the sender's address. CAMPFIELD's registered IP address was tracking this package, according to USPS database information. Investigators executed the warrant that same day and found a package of brown powder inside a clear plastic bag. This powder field tested positive for heroin and was wrapped in multiple plastic envelopes. This exhibit is awaiting final lab analysis at the DEA North Central Lab.

9. On July 24, 2026, Postal Inspectors obtained a search warrant for a parcel with tracking number 9205 5903 2790 8753 6374 97 (Parcel 2) with a return address of Jasin Cook at 14409 Trillium Way, Grand Haven, MI, 49417, and a recipient address of Payton Johnson at 53 Patrick Lane, Carbondale, IL, 62901. Postal Inspectors executed the search warrant and discovered a package containing approximately 173 grams of suspected counterfeit alprazolam. A review of USPS business records further revealed that CAMPFIELD's IP addresses used to track Parcel 1 were also utilized to track Parcel 2.

10. CAMPFIELD's phone number of 616-201-7451 (Subject Device) has been in contact with a Chinese phone number since at least November 2025 and as recently as September 2026.[1] In total, over 1,500+ messages have been sent between

[1] Among other ways, investigators have been able to associate this device to CAMPFIELD as follows: administrative subpoena sent to the Internet Service Provider in May 2026 and received in June of 2026 revealed that this IP address is linked with an active internet account held by CAMPFIELD since November 25, 2025. The IP subpoena return also provided CAMPFIELD's email, CAMPFIELD's home address of 1633 Pennoyer Avenue, Grand Haven, MI (Subject Premises) database checks – and his phone number of 616-201-7451 (Subject Device). Subject Device had been active since November 2025, per a July 2026 subpoena return. In

CAMPFIELD's phone number and the Chinese phone number via an encrypted messaging app in that time frame. The Chinese phone number has been identified during numerous law enforcement investigations as belonging to a Chinese national who works for several China-based companies that distribute pill press machines, dies, and molds and other supplies used to produce tablets or pills. In agents' training and experience, pill presses and pill press supplies, such as molds and dies, are often ordered from China because of the ease of ordering and receiving these supplies and the low probability of interception by US government regulatory and law enforcement agencies.

11. Since June 2026, and within the last 30 days, investigators have observed numerous individuals frequenting CAMPFIELD's residence (Subject Premises) for short periods of time, approximately 2-5 minutes. During these frequent short visits, investigators observed the individuals accessing CAMPFIELD's unlocked vehicle (Subject Vehicle), which was parked in the driveway and retrieving and/or leaving something behind, and then immediately departing. In agents' training and experience, these frequent, short, and contactless visits are a common indicator of individuals buying and selling narcotics. Drug dealers who sell from their residence sometimes wish to avoid making personal contact with their customers and may leave the drugs in an accessible place for the customers to pick up and will direct their customers over phone or some other means to the location of the drugs for

---

July 2026, Subject Device was associated with a Cashapp account with CashTag $round3nick and username Nicholas CAMPFIELD.

pickup, in this case the Subject Vehicle. This activity has been ongoing from the start of surveillance of the Subject Premises and the Subject Vehicle and has continued to the present.

12. On September 25, 2026, Postal Inspectors interdicted one of two suspicious parcels addressed to the Subject Premises. Both parcels had the same sender name and address and the same recipient name and address: “Nicholas Campfield, 1633 Pennoyer Ave., Grand Haven, MI 49417 [Subject Premises].” The parcel not interdicted by inspectors was delivered to Subject Premises on September 25, 2026, per tracking information.

13. Inspectors discovered per available USPIS law enforcement databases and open source searches that the sender’s purported name, “Jordan Taylor” did not associate to the listed address of the aforementioned September parcels, “26454 Western Ave, Highland, CA 92346”. USPS business records showed that the recipient’s address of “1633 Pennoyer Ave, Grand Haven, MI 49417 (Subject Premises)”, has received over 30 suspicious parcels within the last year. Business records also showed that those suspicious parcels contained postage which was paid for through a third party with cryptocurrency, which is indicative of parcels containing a controlled substance.

14. Postal Inspectors obtained a search warrant to open the September 25, 2026 parcel addressed to Subject Premises that was interdicted by law enforcement and discovered approximately 121 grams of blue pills with an ‘M’ on one side and a ‘30’ on the other. A field test using a fentanyl swab yielded a positive result. In my

training and experience, counterfeit M30 pills most often contain fentanyl.

15. On September 29, 2026, United States Magistrate Judge Sally J. Berens issued warrants to search Subject Premises, Subject Vehicle, and Subject Device.

B. Execution of the Search Warrant at Subject Premises

16. In the early morning of September 30, 2026, investigators knocked on the door of the Subject Premises and CAMPFIELD exited the premises and was detained. CAMPFIELD was the sole occupant of Subject Premises.

17. Once Subject Premises was secured, investigators went to CAMPFIELD's bedroom and observed a desktop computer on a desk and could see that CAMPFIELD was logged into the encrypted messaging app, Signal.[2] CAMPFIELD was discussing pills with another Signal user. Investigators observed a handgun on the computer desk in CAMPFIELD's bedroom. The handgun found in CAMPFIELD's bedroom was a black and tan Polymer handgun with serial number PF94050. The handgun was loaded with a magazine, with rounds in the magazine. In CAMPFIELD's bedroom closet was an open safe which contained two-quart sized zip lock bags of round orange pills with the number 30 on one side and b974 on the other side. These pills field-tested positive for methamphetamine. An additional bag of the same pills was found in the basement. An initial weighing indicated that the

[2] Investigators were able to identify this bedroom as CAMPFIELD's in several ways. First, he was the only occupant of the residence and the bedroom was the only bedroom occupied by an adult. The only additional occupied bedroom in Subject Premises had articles belonging to a minor child (or children). Second, CAMPFIELD's bedroom had the lights, computer, and television on at the time investigators made entry, which further indicates that he occupied that room.

orange pills weighed 675 gross grams, which I believe, based on my training and experience, when considering the weight of the packaging, exceeded 500 net grams of methamphetamine pills. Inside the safe was also bulk cash totaling nearly $6,789.

18. Based on my training, experience, and familiarity with the investigation, I believe CAMPFIELD possessed these pills with the intent to distribute them. The quantity alone is indictive of distribution and more than a drug user would possess. That, coupled with the other evidence of CAMPFIELD's distribution business outlined throughout this Continuation, including the volume of parcels intended for his residence, the activity of others making quick trips to Subject Premises, the volume of pill-manufacturing materials, and the possession of a large amount of cash (consistent with sales generated from narcotics distribution) and possession of a firearm (consistent with protecting drugs and drug proceeds), all show that CAMPFIELD intended to distribute the pills.

19. While searching the basement of the Subject Premises, investigators discovered a large variety of packaging material, a heat sealer, and mailing supplies.



20. On a separate table in the basement, investigators found pill press dies and a notebook which appeared to contain a recipe with ratios which in my training and experience is used in the creation of pills using a pill press. On the floor, investigators observed a respiratory mask next to a mixer and a pill press capable of pressing up to 2000 pills per hour. Based on investigators' training and experience,

mixers are used to thoroughly combine all the ingredients that are later added to the pill press to stamp out complete pills. On the floor, under the table agents observed numerous boxes with mailing labels from China. These boxes contained sealed packages of unidentified material, which agents believe are used in CAMPFIELD's pill press operation. Two separate 14-quart storage boxes, one of which was nearly full, contained what appeared to be counterfeit pills. Altogether agents seized approximately ten kilograms of suspected counterfeit Xanax which has yet to undergo testing.













## III. Conclusion

21. Based upon the foregoing information, I believe there is probable cause that NICHOLAS CAMPFIELD committed at least the following offense: possession with intent to distribute 500 grams or a more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).